1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darius Lee PEMBERTON, Defendant-Appellant.
 No. 92-5721.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 11, 1993.
Decided: August 17, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR-92-54)
 Thomas Hilton Johnson, Jr., Greensboro, North Carolina, for Appellant.
 Richard S. Glaser, Jr., Assistant United States Attorney/Chief, Criminal Division, Greensboro, North Carolina, for Appellee.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and MURNAGHAN, Circuit Judges, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The defendant-appellant, Darius Lee Pemberton, has appealed his conviction by a jury of:
 
 
 2
 (1) conspiring from January 1992, to February 19, 1992, to engage in the business of manufacturing explosive materials without a license in violation of 18 U.S.C.Secs. 371 and 842(a)(1), and also conspiring knowingly to transport and ship in interstate commerce explosive materials in violation of 18 U.S.C. Secs. 371 and 842(a)(3)(A);
 
 
 3
 (2) knowingly transporting and shipping and causing to be transported and shipped in interstate commerce on January 15, 1992, explosive materials in violation of 18 U.S.C. Secs. 2, 842(a)(3)(A), and 844(a); and
 
 
 4
 (3) knowingly possessing on January 15, 1992, a firearm in violation of 26 U.S.C. Secs. 5861(d) and 5871 and 18 U.S.C. Sec. 2.
 
 
 5
 Pemberton received a total sentence of 106 months imprisonment and three years supervised release.
 
 
 6
 Pemberton has contended on appeal that the district court erred when it denied his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 because there was insufficient evidence to support a finding of guilt. "In reviewing the denial of a judgment of acquittal, we must determine whether there is no substantial evidence in the record to support the jury's finding that the defendant is guilty beyond a reasonable doubt." United States v. Stockton, 788 F.2d 210, 218 (4th Cir.), cert. denied, 479 U.S. 840 (1986). In making our determination, we must construe the evidence in the light most favorable to the government. Id.; see Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 7
 Pemberton was indicted along with alleged conspiracy members Brian Gregory Kelly, Joe Alonzo Potts, and Phillip James Goines. All three co-conspirators testified at Pemberton's jury trial and provided substantial incriminating evidence. Their testimony at trial reveals that Potts and Kelly approached Pemberton in January 1992, about the possibility of having him act as their supplier of cocaine. Although Pemberton would not commit to providing the men with a source of cocaine for their drug trading, he did take an interest in Kelly's expertise in manufacturing explosives. Pemberton mentioned to Kelly that he was "having a problem" with a former associate by the name of Donald Brown, and he asked Kelly if he could build a device that would be capable of blowing up a house. An agreement ultimately was reached whereby Kelly, assisted by Potts, would build a large bomb for the price of $200. In addition, Pemberton purchased from Kelly on the spot a smaller plastic explosive for $50. One day later, the group met at a restaurant. Pemberton paid the balance owed, and Kelly turned over the large bomb.
 
 
 8
 Shortly thereafter, Pemberton contacted Kelly and Potts because he was having difficulties with the large explosive. When the group reconvened, Pemberton noticed a pipe bomb made by Potts and purchased it for $20. In addition, Pemberton placed an order with Kelly and Potts for an additional 10 pipe bombs. Kelly and Potts thereafter immediately began constructing the bombs to fill Pemberton's order.
 
 
 9
 Sometime around mid-January 1992, Kelly, aware that Pemberton was experiencing difficulties with his finances and with his source for cocaine, introduced to him Phillip James Goines. Goines agreed to have his stepfather in New York City locate a source of cocaine for Pemberton. The day after the arrangements were made, Pemberton and Goines, joined by Kelly, set out for New York City. According to the testimony, Pemberton indicated he would like to sell the pipe bombs he had ordered from Kelly and Potts. Goines suggested that the bombs likely would sell well in New York. Instead of transporting the explosives themselves, however, the three men decided to send them via Federal Express to the home of Goines' stepfather. Pemberton and Kelly went into the Federal Express office, and Pemberton paid for the shipping of six pipe bombs. The group then traveled on to New York where Pemberton purchased crack cocaine. While in the city, at least one of the men attempted to sell one of the pipe bombs. The sale was unsuccessful, and Goines' stepfather agreed to keep the bombs at his residence.
 
 
 10
 In February 1992, statements taken from Potts and Kelly in connection with an unrelated charge led the police to conduct a search, pursuant to a search warrant, of Pemberton's home. After being read his rights, Pemberton gave a statement admitting to some of his conduct in the conspiracy. Pemberton conceded to buying a pipe bomb to hurt Donald Brown and mentioned the mailing of the six bombs through Federal Express. The pipe bombs ultimately were retrieved from New York by the police on February 20, 1992.
 
 
 11
 In short, there clearly was ample evidence to support a jury conviction on all three counts. The co-conspirators testified that Pemberton commissioned Kelly to build a large bomb for the purposes of blowing up the house of David Brown. Pemberton paid for and received that bomb as well as another smaller one. The testimony further showed that in January 1992, Pemberton also ordered an additional 10 pipe bombs from Kelly and Potts. Sometime later, Pemberton, Goines, and Kelly agreed to travel to New York and agreed to attempt to sell some of the pipe bombs Pemberton had ordered in the lucrative New York market. Pemberton played a significant role in the plans to sell the pipe bombs in New York. The testimony revealed that Pemberton assisted in mailing the pipe bombs at the Federal Express office and even paid for the shipping. Further, Pemberton himself has admitted to some of the above conduct in his statement taken on February 19, 1992.
 
 
 12
 In addition, Kelly, Potts, Goines, and Pemberton all stipulated that they were not licensees lawfully entitled to transport or ship in interstate commerce explosive materials. They further stipulated that they did not register any of the pipe bombs in the National Firearms Registration and Transfer Record, as required by 26 U.S.C. Sec. 5841. Finally, the government also presented the testimony of several firearms experts to confirm that the pipe bombs mailed via Federal Express from Greensboro to New York contained smokeless powder and constituted "explosive materials" and "destructive devices" as defined by 18 U.S.C. Sec. 841(c) & (d) and 26 U.S.C. Sec. 5845(f), respectively.
 
 
 13
 There was substantial evidence to support a guilty verdict on all three counts, and the district court committed no error in denying the motion for acquittal. The judgment is accordingly
 
 
 14
 AFFIRMED.